UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2003 NOV 25 P 3: 09

| | |
|---|---|
| ANGEL CABALLERO, Jr.<br>*Plaintiff* | PRISONER<br>CIVIL ACTION NO.<br>Docket No. 3:03CV407(JCH)(HBF) |
| v. | |
| JOHN ARMSTRONG, ET AL<br>*Defendant* | November 24, 2003 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Plaintiff brings this action under 42 U.S.C. § 1983 alleging that defendants were deliberately indifferent to him and/or subjected him to cruel and unusual punishment. Previously, plaintiff brought a state habeas action challenging the practice of placing him in full restraints at recreation. Caballero v. Warden, 2003 Conn. Super Lexis 5 p. 4, 5 (2003)(attached). Plaintiff lost this habeas action. Because plaintiff already litigated the recreation policy in a state court habeas action, plaintiff's civil rights claims must be dismissed under the collateral estoppel doctrine.

Plaintiff also seeks, under supplemental jurisdiction to sue defendants for negligence. Because a claim for negligence is barred under Connecticut General Statutes § 4-165, defendants respectfully move to dismiss the supplemental negligence claims.

### ARGUMENT

The function of a motion to dismiss is to test the legal feasibility of a complaint. Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). A complaint should be dismissed if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-6 (1957).

In deciding a motion to dismiss the court assumes all factual allegations in the complaint are true and construes them most favorably to plaintiff. Scheur v. Rhodes, 416 U.S. 232, 236 (1974). In addition to the complaint, the court may consider and construe any exhibit attached to the complaint. Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994). Moreover, a document outside the pleadings may be considered if "1) there was undisputed notice to plaintiffs of the document's contents and 2) the document was integral to plaintiff's claim." Degrooth v. General Dynamics Corp., 837 F. Supp. 485 (D.Conn. 1993) affirmed 28 F.3d 103 (1994) cert. denied 115 S.Ct. 637 (1994).

### A. THE PLAINTIFF IS COLLATERALLY ESTOPPED FROM BRINGING THIS ACTION AGAINST THE DEFENDANTS

Plaintiff has already litigated whether it constitutes cruel and unusual punishment to have plaintiff recreate in full restraints. See Caballero v. Warden, 2003 Conn. Super. Lexis 5 (Conn. Super 2003)(attached). While plaintiff may be dissatisfied with the result of the habeas action, he is collaterally estopped from bringing this new action against the defendants, because it involves the same issues already litigated in that previous action.

The law is clear, on both the state and federal level, that collateral estoppel or issue preclusion "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action." Aetna Casualty & Surety Co. v. Jones, 220 Conn. 285, 296 (1991); Scalzo v. Danbury, 224 Conn. 124, 128 (1992). Issue preclusion applies if:

> "an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment,..." 1 Restatement (Second), Judgments § 27 (1982). An issue is "actually litigated" if it is properly raised in the pleadings, submitted for determination and in fact determined. *Id.*, 27.

Scalzo, 224 Conn. at 128.

The Connecticut Supreme Court has explained its rational for this doctrine:

2

> The doctrine of collateral estoppel is "based on the public policy that a party should ***not be able to relitigate a matter which it already has had an opportunity*** to litigate." In re Juvenile Appeal (83-DE). [190 Conn. 310, 316 (1983)].

Jones, 220 Conn at 296 (emphasis added); Scalzo, 224 Conn. at 127 (the doctrines of res judicata and collateral estoppel "promote judicial economy by preventing the relitigation of issues or claims previously resolved."). With res judicata, the federal courts have recognized that the full faith and credit clause has established throughout the federal system, the common-law principal that litigation once pursed to judgment shall be conclusive of rights of parties in every other court as in that where judgment was rendered. Morris v. Jones, 329 U.S. 545, 91 L.Ed. 488, 67 S.Ct. 451, 169 ALR 656, (1947), reh. Den. 330 U.S. 854, 91 L.Ed. 1296, 67 S.Ct. 858 (1947). And that conclusiveness of judgment extends to all matters that might have been adjudicated. Commonwealth ex rel. McClintock v. Kelly, 287 Pa. 139, 134 A. 514 (1926).

A judgment is final "not only as to every matter which was offered to sustain the claim, but also as to ***any other admissible matter*** which might have been offered for that purpose.... The rule of claim preclusion prevents reassertion of the same claim ***regardless of what additional or different evidence or legal theories might be advanced in support of it.***" Delahunty v. Massachusetts Mutual Life Insurance., 236 Conn. 582, 589 (1996) (emphasis added).

In addition, mutuality of parties is no longer required to successfully assert collateral estoppel. Jones, 220 Conn. at 302. In rejecting the mutuality requirement, the Connecticut Supreme Court explained:

> To allow a party who has fully and fairly litigated an issue prior to trial to avoid the force of a ruling against him ***simply because he later finds himself faced by a different opponent*** is simply inappropriate and unnecessary.
>
> ...
>
> In light of the scarcity of judicial time and resources, the repeated litigation of ***issues that have already been conclusively resolved by a court*** carries a considerable price tag in both money and time.

3

Here, plaintiff previously brought an action in state court habeas court challenging the use of full restraints on plaintiff during recreation. The court, after a full trial determined that plaintiff had failed to prove that he was being subjected to cruel and unusual punishment.

> In <u>Arey v. Warden</u>, 187 Conn. 324, 445 A.2d 916 (1982), that court held that if a writ seeks to vindicate rights under the eighth amendment to the United States constitution, the petitioner must establish, preferably by objective evidence, that his detention has subjected him to cruel and unusual punishment resulting from the unnecessary and wanton infliction of pain. . . . this court concludes that the petitioner has failed to show that the restraints applied by the respondent to the petitioner during his recreation violate the constitutional prohibition against cruel and unusual punishment.

<u>Caballero v. Warden</u>, 2003 Conn. Super Lexis 5 p. 4, 5 (2003)(attached)

Here, plaintiff is seeking to re-litigate whether it violates his eighth amendment rights to have him recreate in full restraints. This issue was already litigated to decision in Connecticut Superior Court. Accordingly, plaintiff's Complaint should be dismissed in its entirety on the ground of collateral estoppel.

## B. **PLAINTIFF'S PENDENT STATE LAW CLAIMS FOR NEGLIGENCE SHOULD BE DISMISSED**

Plaintiff also brings state law negligence claims against the defendants in their individual capacities. This claims are barred under Connecticut General Statutes § 4-165.

Connecticut General Statutes § 4-165 states in relevant part:

> No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter. . . .

Here, defendants have statutory immunity from being sued for negligence. Plaintiff's supplemental jurisdiction claims for negligence should be dismissed as legally insufficient.

5

Source: Legal > Cases - U.S. > Federal & State Cases, Combined
Terms: **supermax or "administrative segregation" /p "cruel and unusual"** (Edit Search)

↓Select for FOCUS™ or Delivery

2003 Conn. Super. LEXIS 5, *

Angel Caballero v. Warden

CV003178

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF TOLLAND

2003 Conn. Super. LEXIS 5

January 2, 2003, Decided
January 2, 2003, Filed

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Petitioner sought a writ of habeas corpus alleging that respondent warden was violating the inmate's Eight Amendment right to be free from **cruel and unusual** punishment.

**OVERVIEW:** Petitioner alleged that his confinement at the correctional institution was illegal because conditions in the prison were inhumane and dangerous to him. Petitioner alleged that he had been denied recreation since being placed at the institution due to the institution's policy of keeping inmates held in **administrative segregation,** phase one, in full restrains during the recreation period. Petitioner was kept in restraints during this period due to his assaultive behavior toward guards and other inmates. In denying the petition, the superior court found no evidence that petitioner had been subjected to physical force that was repugnant to the conscience of mankind, nor was there evidence of unnecessary and wanton infliction of pain. The court concluded that the use of full restraints during the recreation period was reasonable force applied in a good faith effort to maintain discipline surrounding petitioner, an individual who had proven his tendency to resort to violent behavior toward correction staff and other inmates. Thus, petitioner failed to show that the use of the restraints violated the constitutional prohibition against **cruel and unusual** punishment.

**OUTCOME:** The petition for a writ of habeas corpus was denied.

**CORE TERMS:** inmate, recreation, prison, cruel, cruel and unusual punishment, administrative segregation, phase, doors, handcuffs, infliction of pain, physical force, discipline, quotation, wanton, Eighth Amendment, handcuffed, inhumane, cage, conditions of confinement, restrictive, deprivation, conscience, subjected, repugnant, excessive, prisoner, offenders, mankind, harsh, writ of habeas corpus

**LexisNexis (TM) HEADNOTES - Core Concepts -** ♦ Hide Concepts

Constitutional Law > Cruel & Unusual Punishment

*HN1* The United States Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. In its prohibition of **cruel and unusual** punishments, the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Eighth Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment

*HN2* If a writ seeks to vindicate rights under the Eighth Amendment to the United States Constitution, the petitioner must establish, preferably by objective evidence, that his detention has subjected him to **cruel and unusual** punishment resulting from the unnecessary and wanton infliction of pain. But conditions that cannot be said to be **cruel and unusual** under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment

*HN3* The Eighth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, precludes the imposition of **cruel and unusual** punishment on an individual convicted of a crime. **Cruel and unusual** punishment encompasses more than barbarous physical punishment. It also includes punishments which involve the unnecessary and wanton infliction of pain and those which are grossly disproportionate to the severity of the crime. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment

*HN4* The test for determining whether a given set of conditions of confinement violates the Eighth Amendment is not static. It is determined by the evolving standards of decency that mark the progress of a maturing society. These standards are established not by the opinion of experts as to desirable prison conditions, nor by the subjective views of judges, but rather by objective factors to the maximum extent possible. Unquestioned and serious deprivations of basic human needs and deprivation of the minimal civilized measure of life's necessities are obvious cases of Eighth Amendment violations. But conditions that cannot be said to be **cruel and unusual** under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment

*HN5* Whenever prison officials stand accused of using excessive physical force in violation of the **Cruel and Unusual** Punishments Clause, the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment

*HN6* he Eighth Amendment's prohibition of **cruel and unusual** punishments necessarily excludes from constitutional recognition de minimis uses of force, provided that the use of force is not of a sort repugnant to the conscience of

mankind. More Like This Headnote

**JUDGES:** S.T. FUGER, JR., JUDGE.

**OPINIONBY:** S Fuger

**OPINION:** *MEMORANDUM OF DECISION*

On May 24, 2000, the petitioner filed a petition for a writ of habeas corpus alleging that the respondent warden is violating the petitioner's Eighth Amendment right under the United States Constitution to be free from cruel and unusual punishment. More specifically, the petitioner alleges that "his confinement at [the correctional] institution is illegal because specific conditions in the prison are inhumane and dangerous to [the] petitioner." Am. Pet., at 2.

In support of his petition, the petitioner attached a statement of facts that, in relevant part, states: "That the petitioner has been denied recreation since being placed at the Northern Correctional Institution [hereinafter 'NCI'] due to the institution's policy of keeping inmates in full restraints during the one-hour per day recreation period. That inmates are handcuffed behind the back, shackled at the ankles, and these two restraints are connected by a heavy tether chain with a lock. [*2] That inmates are then led out to a cage, commonly referred to [as] 'the kennel' because it so closely resembles a small dog's cage. That inmates remain in full restraints while in the kennel. That in full restraints, in a cage, within a recreation yard which is also caged at the top of its four cement walls, inmates receive absolutely no opportunity to recreate." *Id.*, at 5-6. The respondent denies the petitioner's allegation that these measures violate the petitioner's right to be free from cruel and unusual punishment. For the reasons set forth more fully below, the petition shall be denied.

This matter came before the court for trial on October 4, 2002. The petitioner and Department of Correction Major Thomas Coates testified at the trial. Additionally, the court received into evidence two exhibits: copies of the petitioner's request forms and grievances filed with the Department of Correction regarding the claim raised in the present petition, as well as a copy of the Department of Correction Administrative Directive 9.4 (hereinafter "A.D. 9.4"). The court has reviewed all of the testimony and evidence and makes the following findings of fact.

FINDINGS OF FACT

1. The [*3] petitioner was in the custody of the Commissioner of Correction at the time he filed the present petition and has remained incarcerated.

2. The petitioner is being held in administrative segregation, phase one, due to his past assaultive behavior towards guards and other inmates.

3. Administrative segregation is not an additional punishment imposed upon an inmate, but instead allows for the safe management of violent inmates who, because of violent behavior or management factors pose a threat to the security of the facility or a risk to the safety of staff or other inmates, can no longer be safely managed in general population.

4. The petitioner is afforded, in accordance with A.D. 9.4, one hour of exercise in a recreation area that is approximately 25' by 30,' surrounded by 30' wall and caged at the top. There are two doors into this recreation facility. The respondent does not consider the recreation facility to be a secure area due to the size of the space, the presence of the two doors and problems with the complete security of the doors.

5. A.D. 9.4 requires that inmates in administrative segregation, phase one, shall, prior to release from a cell, be handcuffed behind the [*4] back except when making a phone call, at which time the inmates be handcuffed in front before leaving the cell. Handcuffs may be removed when an inmate is in a secure shower or secure individual recreation area.

6. Inmates in administrative segregation, phase one, are permitted recreation one (1) hour per day, five (5) days a week in a controlled area, excluding holidays. Restraints (handcuffs) are required unless in a secure individual recreation area. Inmates on restraint status shall not receive recreation with an inmate not on restraint status.

DISCUSSION OF LAW

HN1 "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. In its prohibition of cruel and unusual punishments, the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, [*5] clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." (Internal citations and quotation marks omitted.) _Farmer v. Brennan, 511 U.S. 825, 832, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)._

"In _Arey v. Warden, 187 Conn. 324_ [328-29], _445 A.2d 916 (1982),_ that court held that, HN2 if a writ seeks to vindicate rights under the eighth amendment to the United States constitution, the petitioner must establish, preferably by objective evidence, that his detention has subjected him to cruel and unusual punishment resulting from the unnecessary and wanton infliction of pain. But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. (Internal quotation marks omitted.) _Hunnicutt v. Commissioner of Correction, 67 Conn.App. 65, 69, 787 A.2d 22 (2001)._

HN3 "The eighth amendment to the United States constitution, which is applicable to the states through the fourteenth amendment, precludes [*6] the imposition of cruel and unusual punishment on an individual convicted of a crime. Cruel and unusual punishment encompasses more than barbarous physical punishment. It also includes punishments which involve the unnecessary and wanton infliction of pain and those which are grossly disproportionate to the severity of the crime.

HN4 "The test for determining whether a given set of conditions of confinement violates the eighth amendment is not static. It is determined by the evolving standards of decency that mark the progress of a maturing society. These standards are established not by the opinion of experts as to desirable prison conditions, nor by the subjective views of judges, but rather by objective factors to the maximum extent possible. Unquestioned and serious deprivations of basic human needs and deprivation of the minimal civilized measure of life's necessities are obvious cases of eighth amendment violations . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against [*7] society." (Internal citations and quotation marks omitted.) _Arey v. Warden, supra, 187 Conn. at 328-29._

In _Hudson v. McMillian, 503 U.S. 1, 6-7, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992),_ the United States Supreme Court held "that, HN5 whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the

core judicial inquiry is . . . whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." HN6 "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 10-11.

While the petitioner alleges that his confinement is illegal because specific conditions in the prison are inhumane and dangerous, there is no evidence to show that the petitioner has been subjected to physical force that is repugnant to the conscience of mankind. Nor is there evidence of unnecessary and wanton infliction of pain. The petitioner was placed **[*8]** in administrative segregation, phase one, because of assaultive behavior toward guards and other inmates. A.D. 9.4 requires that inmates in administrative segregation, phase one, be restrained during the recreational period. While A.D. 9.4 gives the respondent the discretion to remove handcuffs when an inmate is in a secure individual recreation area, there is no requirement that the handcuffs *must* be removed in a secure recreation area. Stated differently, the applicable directives allow, but do not require, the removal of restraints when the inmate is in a secure area, and the respondent is under no mandate to remove the petitioner's restraints.

The respondent, who is responsible for maintaining internal order and discipline, as well as securing correctional institutions against unauthorized access or escape, does not consider the recreational facility in which the petitioner exercises to be a secure area due to the size of the space, the presence of the two doors and problems with the complete security of the doors. Such a determination is entirely in the province of the respondent, and courts, who are ill equipped to deal with the problems of prison administration, should **[*9]** abstain from attempting to resolve prison problems by decree. *Washington v. Meachum*, 238 Conn. 692, 732-33, 680 A.2d 262 (1996). The use of full restraints during the recreation period is, in this court's conclusion, reasonable force applied in a good faith effort to maintain discipline surrounding the petitioner, an individual who has proven his tendency to resort to violent behavior toward correction staff and other inmates.

Based on the foregoing, this court concludes that the petitioner has failed to show that the restraints applied by the respondent to the petitioner during his recreation violate the constitutional prohibition against cruel and unusual punishment.

Accordingly, the petition for a writ of habeas corpus is denied.

S.T. FUGER, JR., JUDGE

Source: Legal > Cases - U.S. > Federal & State Cases, Combined
Terms: **supermax or "administrative segregation" /p "cruel and unusual"** (Edit Search)
View: Full
Date/Time: Tuesday, November 18, 2003 - 10:07 AM EST

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.