UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
CLARENCE AUSTIN              :
                             :           PRISONER
     v.                      :   Case No. 3:98CV1279(DFM)
                             :
DR. BLANCHETTE, et al.¹      :
```

## RULING ON DEFENDANTS' MOTION TO DISMISS, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION NOT TO DISMISS SUMMARY

The plaintiff filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915. He alleges, primarily, that the defendants were deliberately indifferent to his medical needs when they denied him required medication for seizures. He seeks damages as well as the removal of an allegedly false charge of assault from his record. Pending is the defendants' motion to dismiss the second amended complaint. For the reasons that follow, the defendants' motion is granted.

### Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most

---

¹ The named defendants in the second amended complaint are Dr. Blanchette; Dr. SuBoczy; Dr. Parlsi; Leslie Perrotti, improperly identified as Perotti; S. Franco, improperly identified as Franco's; Sandra Pierce; Deborah Welch, improperly identified as Welels; Reginald McAllister, improperly identified as McAlliste; MoBuzzi; Debra Kindness; and Ray Bernard.

favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). In reviewing this motion, the court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

## Facts

Keeping this standard in mind, the court accepts as true the following allegations taken from the second amended complaint.

The plaintiff injured his head while he was confined in the Bridgeport Correctional Center medical unit and was sent to an outside hospital for sutures. At the hospital, the plaintiff

2

told the attending physician that he suffered from seizures. The doctor prescribed medication for seizures. When the plaintiff returned to the Bridgeport Correctional Center, Dr. Parlsi approved the plaintiff's medication. S. Franco dispensed the medication.

On August 16, 1995, defendant Welch was in the medical unit when the plaintiff was admitted to the unit after experiencing a blackout.

On August 25, 1995, defendants Pierce and Perrotti completed incident reports describing unauthorized actions by the plaintiff.

On an unspecified date, defendant Franco gave the plaintiff an injection, allegedly at the direction of Dr. Parlsi. While he was sedated, unnamed employees of the Department of Correction transferred the plaintiff to Northern Correctional Institution. The plaintiff awoke in the medical unit where he was confined to a slab, naked and in four-point metal handcuffs. The plaintiff assumes that Dr. Blanchette or Dr. SuBoczy ordered the restraints despite Department of Correction Administrative Directives which provide that such restraints only be used on inmates in restrictive housing.

Defendant McAllister was aware of the plaintiff's need for seizure medication because he had dispensed the medication to the plaintiff during the plaintiff's earlier incarceration at Somers Correctional Institution. Defendants McAllister and MoBuzzi

3

withheld the plaintiff's medication while he was at Northern Correctional Institution.

The plaintiff filed a habeas action in state court concerning his seizure medication. At the state court hearing on the habeas, Dr. Blanchette testified that the plaintiff's seizure medication was discontinued for one year because the plaintiff was believed to be faking his seizures. The state court denied the plaintiff's habeas petition in 1996.

Sometime after the state court issued its decision, defendant Kindness began "talking foul" to the plaintiff. Kindness called the plaintiff names and intentionally dropped his medication. Defendant Bernard "snach[ed] [the plaintiff] around, and shove[d] [him] during a blackout and seizure" and spoke harshly to the plaintiff. In addition, the plaintiff presumes that defendant Bernard punched him in the eye when Bernard and an unidentified correctional officer went to the plaintiff's cell after he lost consciousness and fell from his bunk.

## Discussion

The defendants move to dismiss the second amended complaint. In response, the plaintiff filed a motion for summary judgment and a motion in which he asks the court to dismiss his motion for summary judgment.

I. <u>Plaintiff's Motion for Summary Judgment</u>

In his motion for summary judgment, the plaintiff acknowledges the requirements set forth in Rule 9(c), D. Conn. L.

4

Civ. R., and notes that the court denied his previous motion for summary judgment because he failed to comply with the local rules.

Local Rule 9(c)1 provides: "There shall be annexed to a motion for summary judgment a document entitled 'Local Rule 9(c)1 Statement,' which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried."

The plaintiff has not filed a Local Rule 9(c)1 Statement with his motion. Although he states that he intended to file the statement in the future, none has been filed to date. Accordingly, the plaintiff's Motion for Summary Judgment is denied without prejudice for failure to comply with the local rules.[2] The plaintiff's Motion Not to Dismiss Summary also is denied.

II. Defendants' Motion to Dismiss

The defendants move to dismiss this action on seven grounds: (1) the plaintiff's claims regarding denial of seizure medication are barred by *res judicata* or collateral estoppel; (2) the claims regarding denial of seizure medication are barred under the Rooker-Feldman doctrine; (3) the plaintiff fails to state a claim against defendants Kindness, Welch and Perrotti; (4) none of the

---

[2] Nonetheless, the court will consider the arguments made in the plaintiff's motion for summary judgment in deciding the defendants' motion to dismiss.

named defendants were involved in the plaintiff's transfer to Northern Correctional Institution; (5) the plaintiff has not exhausted his administrative remedies with regard to any of the claims in the second amended complaint; (6) the defendants are protected by qualified immunity; and (7) service has not been effected on defendants MoBuzzi, SuBoczy, Franco, Pierce or Parlsi in their individual capacities.

A.    Res Judicata/Collateral Estoppel

The defendants first contend that because the claim concerning the plaintiff's seizure medication was denied in the state habeas action, it is barred in this court.

Under the Full Faith and Credit Clause of the United States Constitution, U.S. Const. Art. IV, § 1, "federal courts must accord state court judgments the same preclusive effect as other courts within that state." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Thus, "issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the state where the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). To determine whether the plaintiff is barred from litigating his claim for denial of proper medical care, the court looks to Connecticut law. See Burgos, 14 F.3d at 790, 792 (federal court looks to state law to determine whether claim are barred by *res judicata*

6

or collateral estoppel).

In Connecticut, the doctrine of collateral estoppel bars a party from relitigating issues that were fully and fairly litigated in a prior action. See Aetna Casualty & Surety Co. v. Jones, 596 A.2d 414, 421 (Conn. 1991). An issue was fully and fairly litigated where the issue was "properly raised in the pleadings, submitted for determination, and in fact determined." Scalzo v. Danbury, 617 A.2d 440, 442 (Conn. 1992). In addition, there must not have been any procedural limitations in the original action which would have precluded a full and fair opportunity to litigate the issue.

Mutuality of parties is not required for invocation of the doctrine of collateral estoppel. The only requirement is that the party against whom the doctrine is applied must have had the opportunity to litigate the merits of the issue in the prior action. See Blonder-Tongue Labs., Inc. v. University of Ill. Found., 402 U.S. 313, 329 (1971). The court is not required to permit "repeated litigation of the same issue as long as the supply of unrelated defendants holds out." Id.

The defendants point out that the plaintiff filed a habeas corpus action in state court raising the same issue he raises here. They have attached to their memorandum a copy of the state court's decision holding that the plaintiff failed to state an Eighth Amendment claim in the state habeas action. The plaintiff

7

does not dispute that he filed the state court action.[3]

---

[3] The state court held a hearing on these claims on October 4, 1996. In its Memorandum of Decision filed on October 31, 1996, the state court analyzed this claim as follows.

> At the heart of the petitioner's claim is his assertion that he suffers from seizures for which he requires anti-seizure prescriptive medication. He claims that the refusal of the Department of Correction to provide these anti-seizure medications to him constitutes cruel and unusual punishment.
>
> \* \* \* \* \*
>
> At the time of his arrest in August of 1995, the petitioner was taking the prescriptive medications tegretol and phenobarbital, both prescribed for him as a result of a history of seizures. While the petitioner's pre-incarceration hospital and medical records were not adduced at the hearing, the petitioner testified that he had suffered two traumatic head injuries, and that he had suffered from spinal meningitis prior to his 1995 arrest.
>
> \* \* \* \* \*
>
> The petitioner claims that he has continued to suffer from seizures while in custody. The available evidence, however, belies this claim. On August 25, 1995, when the petitioner was transferred to Northern Correctional Institution his behavior during the initial processing was video taped and viewed during the hearing. On the tape, the petitioner can be seen placing a blanket and a bed mattress up against the glass to prevent outside viewing into his cell. When he is given a direct order to place his hands in a slot so he can be handcuffed, he fails to respond. Additionally, he can be seen removing his clothes, and, at one point, drinking water from his cell toilet. At no time are his movements jerky or spasmatic. Video recordings of his behavior on February 23, 1996, August 2, 1996, and August 18, 1996 all fail to demonstrate behaviors and body movements normally associated with seizure activity.
>
> During the hearing, the respondent called Edward Blanchette, M.D., who is the Director of Clinical Medicine for the Department of Corrections. Dr. Blanchette, who had reviewed the petitioner's medical file and who was familiar with the episodes depicted on the video tapes, testified that the behaviors manifested by the petitioner are not indicative of seizure activity. As a matter of definition, Dr. Blanchette characterized a seizure as abnormal electrical activity of neurons that conduct electricity in the brain, a burst of intense activity usually of not more duration than ninety (90) seconds. From his review of the video tapes as well as anecdotal information concerning the petitioner's behavior during episodes the petitioner describes as seizures, Dr. Blanchette has determined that these events were not seizures. While uncertain of the cause of these behaviors Dr. Blanchette testified to his belief that they either reflect mental health issues or that the petitioner may be malingering. Dr. Blanchette testifies that, based on his experience as a physician working within the corrections system, it is not unusual for an inmate to feign bizarre behaviors in order to obtain prescriptive

8

A review of the state court decision reveals that the state court considered the merits of the plaintiff's claim. Accordingly, the

---

> medications, or simply to draw attention to one's self.
> For a substantial period of time, the petitioner was afforded anti-seizure medication by the Department of Corrections. Although there was a brief interruption in the availability of prescriptive medication to the petitioner upon his arrest and initially processing, seizure medications were prescribed for the petitioner by Department of Corrections medical personnel until July of 1996 when the medications were stopped. While the initial decision of the Department to continue the petitioner on anti-convulsive medications was based on his reports of past and ongoing seizure activity, E.M. McCoy, M.D., a Department of Corrections staff physician, testified that he became increasingly suspicious that the petitioner was not, in fact, experiencing seizures.
> As a result of his uncertainty, and in order to finally resolve lingering questions about the nature of the petitioner's episodes, the Department arranged for the petitioner to have an electroencephalogram (EEG) at the University of Connecticut Health Center on February 27, 1996. As indicated by Dr. Blanchette, an EEG is an examination which measures brain wave movement to enable the examiner to determine whether there is any ongoing seizure activity. This EEG report was introduced into evidence as part of the petitioner's Corrections medical file. The physician conducting the EEG reported that during the examination the petitioner experienced an episode typical of behaviors the petitioner had claimed to be seizures. Nevertheless, the EEG indicated no epileptic activity. Based on this objective negative finding, the Department Medical Staff determined to gradually remove the petitioner's regimen of anti-seizure medications. As a consequence, his dosage was reduced and finally eliminated by July 1996.
> Based on this history, the court finds that it does not constitute cruel and unusual punishment for the respondent to refuse to provide anti-seizure medication to the petitioner. While the court is concerned from the history given in testimony by Delores Laws and Richard Reynolds that the petitioner may well have experienced seizures in the past, and this likelihood had not been ruled out by the respondent medical staff, there is not evidence that the petitioner does now or had in the past several months suffered any epileptic episodes. Thus, while the court believes that the petitioner's health status bears close monitoring, the court is unpersuaded that the quality of medical care afforded to him by the respondent is violative of his constitutionally protected rights.

Austin v. Warden, No. CV96-0002172 (Ct. Super. Ct. Oct. 31, 1996) (Memorandum of Decision, Attachment to Defs.' Mem., at 2, 3, 4-7) (internal citations omitted).

plaintiff is estopped from reasserting the same claim in federal court. The defendants' motion to dismiss is granted as to all claims arising from the alleged denial of anti-seizure medication.[4]

B.  Rooker-Feldman Doctrine

The plaintiff attached to his original complaint copies of a petition to file a late appeal of the denial of his state habeas petition. To the extent that the plaintiff is attempting to appeal the state court's decision to this court, the defendants argue, his claim is barred by the Rooker-Feldman doctrine. This court agrees.

In Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983), the Supreme Court held that the federal district court lacks subject matter jurisdiction to review state court judgments. Under the Rooker-Feldman doctrine, the federal district cannot entertain a collateral attack on a state court judgment "cloak[ed] . . . as a [section] 1983 action." Davidson v. Garry, 956 F. Supp. 265, 269 (E.D.N.Y. 1996), aff'd, 112 F.3d 503 (1997). Section 1983 may not be used as a substitute for the right of appeal in the state courts. See Tonti v. Petropoulous,

---

[4] Service has not yet been effected on defendant MoBuzzi. The court notes, however, that the only claim against defendant MoBuzzi is that she did not provide the plaintiff his anti-seizure medication. Because the court has determined that this claim is barred by collateral estoppel, the claim against defendant MoBuzzi is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

10

656 F.2d 212, 216 (6th Cir. 1981); McArthur v. Bell, 788 F. Supp. 706, 709 (E.D.N.Y. 1992); Noyce v. City of Iola, Kansas, No. 89-4092-R, 1990 WL 41399 (D. Kan. Mar. 29, 1990) (citing cases).

This court lacks subject matter jurisdiction to review the actions of the state court. See Moccio v. New York State Office of Court Admin., 95 F.3d 195, 198 (2d Cir. 1996) (holding that challenge under Rooker-Feldman doctrine goes to subject matter jurisdiction). The plaintiff's recourse is in the state courts with a final appeal to the United States Supreme Court. Because the district court lacks subject matter jurisdiction to review the actions of the state court, the defendants' motion to dismiss is granted as to any possible request that this court overturn the decision of the state court denying the petitioner's state habeas petition.

C.  Failure to State a Claim

The defendants next contend that the plaintiff fails to state a claim against defendants Kindness, Welch and Perrotti. In addition, the court considers the claims against defendants Pierce, SuBoczy, Parlsi, Franco, Blanchette and Bernard. Because the court has granted the defendants' motion to dismiss as to all claims regarding the denial of anti-seizure medication, the court considers below only the allegations unrelated to the denial of medication.

1. <u>Defendant Kindness</u>

The plaintiff alleges that defendant Kindness swore at him and dropped his medication. Allegations of verbal harassment and name-calling are insufficient to support a claim under section 1983 unless the prisoner also alleges an appreciable injury. <u>See Purcell v. Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."). Here, the plaintiff does not allege that he suffered any injury as a result of the language used toward him by defendant Kindness. Thus, the verbal harassment claims are dismissed.

The plaintiff also alleges that defendant Kindness deliberately dropped his medication.[5] To the extent that the plaintiff is attempting to assert a claim against defendant Kindness for deliberate indifference to his serious medical needs, his claim fails. Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. <u>See Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To prevail on such a claim, however, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to

---

[5] The court notes that the plaintiff alleges that this incident happened after the state court had ruled that the Department of Correction had not violated the plaintiff's constitutional rights when it discontinued his anti-seizure medication. Because of the timing of the incident, the court is unclear as to what medication was being dispensed but considers the claim.

12

serious medical needs. Id. at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. See Id. at 104-05. Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). An inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994).).

In this case, the plaintiff alleges only that defendant Kindness dropped his medication. He does not allege that he

13

failed to receive a replacement or that he suffered any effects from her actions. Accordingly, the court concludes that the plaintiff fails to state a claim against defendant Kindness for deliberate indifference to a serious medical need. Thus, the defendants' motion to dismiss is granted as to this claim as well.

2. Defendant Welch

The plaintiff states only that defendant Welch was present in the medical unit at Bridgeport Correctional Center on one occasion when the plaintiff was admitted after experiencing a "blackout." He does not allege that defendant Welch did anything or violated any protected constitutional right. The court cannot discern any basis for a claim against defendant Welch. Accordingly, the defendants' motion to dismiss is granted as to defendant Welch.

3. Defendants Perrotti and Pierce

The plaintiff alleges that defendants Perrotti and Pierce wrote misleading incident reports concerning his out-of-cell activities. False accusation, without more, is not cognizable in a section 1983 action. Inmates "have no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988). Inmates do, however, have a constitutional right "not to be deprived of a

14

protected liberty interest without due process of law." Id. An inmate's protection against false accusations lies in the procedural due process protections required in the hearing process by Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974). See Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984). "[A]s long as the disciplinary hearing that follows a false misbehavior report complied with due process, the 'filing of unfounded charges [does] not give rise to a per se constitutional violation.'" Anderson v. Sullivan, 702 F. Supp. 424, 427 (S.D.N.Y. 1988)(quoting Freeman, 808 F.2d at 953). Thus, a false accusation, without more, does not violate an inmate's constitutional rights as long as the inmate has the opportunity to rebut the charge at a hearing. See Freeman, 808 F.2d at 951. See also Hanrahan v. Lane, 747 F.2d 1137 (7th Cir. 1984) (allegation by inmate that he was falsely accused, without more, does not state civil rights claim); Carolina v. Murray, No. 3:96cv1802(AHN), 1997 WL 317319, at *2 (D. Conn. May 23, 1997) (dismissing sua sponte complaint alleging false accusation where plaintiff failed to allege deprivation of procedural due process at associated disciplinary hearing).

Here, the plaintiff does not allege that he received a disciplinary report as a result of the allegedly misleading incident reports. Thus, he fails to state a claim upon which relief may be granted against defendants Perrotti and Pierce. The defendants' motion to dismiss is granted as to all claims