UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

Jul 6  3 39 PM '99

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

STANLEY CHANCE,
    Plaintiff,

v.

JOHN ARMSTRONG, et al.,[1]
    Defendants.

PRISONER
Case No. 3:96CV1589(HBF)

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff filed this action <u>pro se</u> and <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915, alleging that he was denied due process at an Administrative Segregation hearing held on May 17, 1996. Pending are motions for summary judgment filed by plaintiff and defendants. For the reasons that follow, plaintiff's motion is **DENIED** and defendants' motion is **GRANTED**.

---

[1] The named defendants are John Armstrong, Jack Tokarz, Michael Bonzagni, Fred Levesque, John Sieminski, Cheryl Lessard, Karen Massey, Janet Sicilia, Delores Walker and David Patterson. The court dismissed the original complaint <u>sua sponte</u> and granted plaintiff leave to amend. (<u>See</u> Doc. #7.) The plaintiff failed to supplement his allegations against defendants Walker and Patterson in his amended complaint. Thus, the court affirmed the dismissal of all claims against defendants Walker and Patterson and ordered the amended complaint served on the remaining defendants. (<u>See</u> Doc. #9.)

## Facts[2]

Plaintiff is currently serving a sentence for assault on a correctional officer and arson. On April 4, 1995, plaintiff was afforded a hearing to determine whether he should be confined in Administrative Segregation as a result of receiving multiple disciplinary hearings and writing threatening letters to staff members. After the hearing, plaintiff was recommended for assignment to Administrative Segregation. Subsequently, the Office of the Attorney General recommended that plaintiff be afforded a second hearing regarding placement in Administrative Segregation.

On May 10, 1996, defendant Sicilia delivered to plaintiff a notice of the Administrative Segregation hearing. The notice provided:

> REASON FOR HEARING: Your threatening behavior dictates the need for this review to take place. On 7/14/94 you were reviewed and denied placement on A/S. Since that time you have received 50 DR's, 23 of those have been received while at the Northern CI. Several of these DR's have been for Interfering with Safety and Security and Threats. The DR's for Threats have included graphic violent letters sent to various staff members. Besides your DR history, material that will be utilized in reaching a decision will include written documentation from Cheshire

---

[2] The facts are taken from the defendants' Statement of Material Facts Not in Dispute and attached exhibits [Doc. #41], the Affidavits of Stanley Chance and attached exhibits [Docs. ##42, 54], Plaintiff's Statement of Material Facts Not in Dispute [Doc. #38] and the attachments to plaintiff's memorandum in support of his motion for summary judgment.

2

>CI, MacDougall CI, previous A/S hearings, and
>copies of letters you have sent DOC
>employees.

(Pl.'s Mot. Summ. J. Ex. A-15.)

Defendant Sicilia refused to provide plaintiff copies of the threatening letters and the fifty disciplinary reports. When the disciplinary reports were issued, however, plaintiff would have received copies of each report. In addition, a copy of any threatening letter would have been attached to the disciplinary report for threats. Plaintiff was provided a copy of a computer printout listing all of his disciplinary reports. He also was afforded an opportunity to review his master file and copies of several documents from the file were provided to plaintiff.

Defendants contend that plaintiff requested no witnesses at the hearing. In the space for requested witnesses on the notice of hearing form, the plaintiff listed copies of all documents. Although plaintiff argues that he was unable to identify any witnesses until he had an opportunity to review the documents, he fails to provide any documentary evidence that he requested witnesses at any time before the May 17, 1996 hearing.

After the hearing, plaintiff received a copy of the Restrictive Status Report of Hearing for Placement or Removal which contained the decision and reasons for placing plaintiff in Administrative Segregation. On June 7, 1996, plaintiff wrote a letter to defendant Sieminski questioning why several statements made by plaintiff at the hearing were not included in the summary

3

of his statement. On June 17, 1996, plaintiff was provided a continuation sheet of plaintiff's statement. This sheet was reviewed by the hearing officer but not provided to plaintiff with his copy of the report. Plaintiff contends that defendant Sieminski ordered this page fabricated. Plaintiff appealed the decision to defendants Levesque and Armstrong. The appeals were denied.

Plaintiff filed a habeas corpus action in state court challenging the hearing process leading to his confinement in Administrative Segregation. On October 16 and 18, 1996, a hearing was held in state court. Testimony was presented concerning the April 1995 and May 1996 hearings. Plaintiff called eight witnesses and testified himself. The state court determined that plaintiff had received all appropriate process and dismissed the petition.

> I think that as a preliminary matter, the Court needs to observe-and I'm referring to Wolff v. McDonnell at 418 United States 539, a 1974 case. The Wolff case, counsel and Mr. Chance, was a case in which the Supreme Court was looking at circumstances in which an inmate had undergone a hearing in which that inmate was subjected to a loss of earned good time credits, and it's a case in which the Supreme Court found that there was a liberty interest.
>
> In the Wolff case the Court held, as Mr. Chance has pointed out and I think Mr. Strom acknowledges, that there are a number of rights that are to be accorded to inmates who are subjected to disciplinary hearings at which they have a liberty interest, and those do include an advance written notice of the

4

claimed violation, a written statement of the factfinders as to the evidence relied upon, and the reasons for the disciplinary action taken. They also deal with the issue of a witness-and inmate, excuse me, be entitled to call witnesses, but as you may know, the right to call witnesses is not an absolute right.

The Court in <u>Wolff</u> stated, "It may be an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence, but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required."

As a preliminary matter, I doubt that Mr. Strom acknowledges that <u>Wolff</u> binds the Department of Corrections in an administrative segregation hearing because of the claim that in an administrative segregation hearing an inmate doesn't have a liberty interest with respect to the classification that attends to being placed in administrative segregation. Nevertheless, Mr. Chance, I find that the <u>Wolff</u> requirements were met in this case.

\* \* \*

Mr. Chance also noted that his <u>Ponte</u> rights had been denied to him, and he was referring to <u>Ponte v. Real</u>, which is 471 U.S. 491. It's a 1985 case, and that deals with the reasons for denying an inmate witnesses.

In this particular case, while the evidence is somewhat in contrast as to whether Mr. Chance did or did not seek witnesses at each of the hearings, the Court doesn't need to reach that point, because assuming that he was denied witnesses at both hearings, the testimony adduced at this hearing before this Court satisfies the Court that there were sufficient reasons not to bring to the hearing the witnesses for the reasons that

5

were stated.

Additionally, the hearing officer was made aware of what the witnesses-in the second hearing, the hearing officer was made aware of what the witnesses would have stated, and Mr. Chance was given the opportunity to state what their testimony would have been.

The right to call witnesses is not an absolute right and has to be measured in the context of the needs of the institution, and that has to be balanced with the inmate's rights with respect to that.

As to the notices, Mr. Chance, Mr. Strom is right that you have no absolute right to be given copies of the documents upon which the hearing officer is going to rely. You have a right to know what those documents are, but there's no requirement that I find in any of the decisional law that you actually be given copies of those documents, as long as you are made aware of the facts upon which the hearing officer is going to rely, the claims with respect to your conduct, and I find that both notices in both regards met that requirement; that is to say, the reasons for the administrative hearing and the facts upon which the recommendation for the hearing was made were both set forth to you.

And, frankly, whether it was twenty-three, twenty-five, twenty or thirty disciplinary reports really doesn't make any difference. I find it was the fact of those reports, Mr. Chance.

The letter to the nurse, Mr. Chance, I'm not going to comment if I were a hearing officer whether I would have placed you in administrative segregation only for that letter, but I will tell you that if I were a judge with someone bringing me a warrant for an arrest for the crime of threatening, I would have signed the warrant on that letter, Mr. Chance, at that time, that I did find the letter to be criminally threatening.

But, nevertheless, for purposes of this hearing, you were informed of the information upon which the hearing officer was going to rely.

Now, with respect to the transcript, there's no requirement that there be a verbatim recording of each and every word that's stated at the administrative segregation hearing. If we assume for the moment that <u>Wolff</u> applies, <u>Wolff</u> basically says that there should be a recording of the hearing.

You're correct, Mr. Chance, that the recorders determine what to put down. You're right about that. It's clear to me from the evidence that the recorders decide what they're going to put down, and the recorders said they put down what was pertinent. They claim that you sometimes repeated yourself and they didn't write down everything that you said each time you said it, but that they put down the essence of what you said.

I find that meets a fairness requirement with respect to having a record of the proceedings.

You want me to conclude because the original notes were shredded, some evil intention with respect to that, and yet I'm not aware that it's not the norm that once the record of the proceedings is prepared that the originals aren't shredded, and so I don't make any conclusions as to evil motives with respect to the destruction of the original notes.

Although it might be a good idea that those notes be preserved, it's certainly not the Court's business to tell the Commissioner of Corrections how he should operate the correctional institute with respect to that, so long as there is an adequate record of the hearings, and I believe that there was.

My comments with respect to your not having an absolute right to have copies of all documents really go to all of the testimony regarding your request for copies of the

7

fifty disciplinary reports and copies of the letters. I find no affirmative obligation on the part of the Department of Corrections to provide copies to you, so long as you have notice of the information upon which they're relying to go forward with the administrative segregation hearing.

To the extent that <u>Superintendent v. Hill</u> is relevant, without commenting as to whether or not it is binding, and that's at 472 U.S. 445, a 1985 U.S. Supreme Court case that deals with the quality of evidence that must be present for a determination at a disciplinary hearing, I find that the evidence in this case was more than mere evidence, but it was substantial evidence to warrant the conclusions of each of the hearing officers.

The second hearing, Mr. Chance, as I indicated to you from the bench, I didn't find to be an admission by Corrections that the first hearing was flawed. I have seen-perhaps just because I've been the habeas judge, I have seen in other cases where the Attorney General's Office will agree to give an inmate a second hearing, frankly, to see if that could avoid going through a hearing where they have to bring in a whole bunch of witnesses and have a case tried before a judge and all of the requirements that are attendant to that. So I've made nothing of the fact that there was a second hearing, other than that a second hearing did take place, and I thought that you were accorded appropriate process with respect to the second hearing.

As to your claim that the third page of the hearing record of the second hearing was fabricated, I find you've not met your burden of proof. The hearing officer testified that he had that document before him in its entirety at the time that he made his determination, and if the evidence in that regard is in equipose, then you've not met your burden. I found his testimony in that regard to be, in fact, credible.

8

\* \* \*

> For all the reasons that I have stated, Mr. Chance and Mr. Strom, the petition is dismissed.

(Defs.' Statement of Material Facts, Transcript of October 18, 1996 at 66-68, 70-74, 75, from <u>Chance v. Warden</u>, Case No. CV 95-2015 (Conn. Super. Ct. Oct. 18, 1996), <u>appeal dismissed</u>, 47 Conn. App. 935, <u>cert. denied</u>, 244 Conn. 935 (1998).)

## Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. <u>See</u> Rule 56(c), Fed. R. Civ. P.; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir.) (quoting <u>Anderson</u>, 477 U.S. at 248), <u>cert. denied</u>, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary

judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978).

When cross-motions for summary judgment are presented to the court, summary judgment should not be granted "unless one of the moving parties is entitled to judgment as a matter of law upon

facts that are not genuinely in dispute." Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975).

## Discussion

Defendants have filed a motion for summary judgment on four grounds: (1) this action is barred by collateral estoppel because plaintiff's claims have been litigated in state court; (2) plaintiff received appropriate process, namely a nonadversarial review of his placement within a reasonable time; (3) plaintiff received advance written notice of the Administrative Segregation hearing, the opportunity to appear and present witnesses and a written statement of the decision; and (4) some evidence supported the decision that plaintiff should be confined in administrative segregation. Plaintiff claims that he is entitled to summary judgment because he was denied due process at the Administrative Segregation hearing. The court considers these motions below.

Defendants contend that this action is barred by the doctrine of collateral estoppel because plaintiff raised the same issues in a state habeas action. This court agrees.

Federal courts are required by statute to give a prior state court judgment the same preclusive effect that the judgment would receive in another court within the state that issued the judgment. See 28 U.S.C. § 1738. Actions brought pursuant to 42 U.S.C.§ 1983 are not exempt from this rule. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 84-85 (1984)

11

(approving application of claim preclusion in § 1983 action); Allen v. McCurry, 449 U.S. 90, 103-04 (1980) (approving application of issue preclusion in § 1983 action).

In Connecticut, "'for an issue to be subject to collateral estoppel, [1] it must have been fully and fairly litigated in the first action. [2] It also must have been actually decided and [3] the decision must have been necessary to the judgment.'" Aetna Casualty & Surety Co. v. Jones, 220 Conn. 285, 296, 596 A.2d 414, 421 (1991) (quoting Virgo v. Lyons, 209 Conn. 497, 501, 551 A.2d 1243, 1245 (1988)). Thus, the court must determine what issues were necessarily decided in the state habeas proceeding and whether plaintiff was afforded a full and fair opportunity to litigate those issues in the state proceeding.

The issue in the state habeas action was whether plaintiff had received due process in connection with his confinement in Administrative Segregation at Northern Correctional Institution. Plaintiff filed the state action after the first Administrative Segregation hearing in April 1995. The first hearing was conducted because plaintiff had "become a chronic management problem with over 23 DR's in 6 months and most recently . . . threatening letters to staff members." (Pet'r's Ex. 3, attached to Doc. #40, Defs.' Mem. Supp. Mot. Summ. J.) During the pendency of the state action, plaintiff was afforded a second Administrative Segregation hearing. The focus of the second hearing was the same as that of the first hearing, whether

plaintiff should be confined in Administrative Segregation as a result of his disciplinary history and threatening letters to staff members. In the state case, the plaintiff presented evidence concerning both hearings.

Plaintiff now argues that he was not afforded a full and fair opportunity to litigate the issues raised in this action because he did not raise the argument that defendant Sicilia required him to identify witnesses "in a vacuum" before he had reviewed the documents that would be used against him.

At the habeas hearing, plaintiff testified that when defendant Sicilia gave him the notice of the second hearing, she offered him the opportunity to review his file. Plaintiff stated that he refused to examine his file and requested copies of the fifty disciplinary reports referenced in the notice. He acknowledged that he had received the disciplinary reports when they had been issued and that all of the reports would have been in the file that he declined to review. (See Transcript of October 18, 1996 at 21.) Plaintiff also testified that he initially refused documents obtained for him by his advocate on May 14, 1996, but that he accepted them the following day. (See id. at 23.) Plaintiff also testified that he "did request witnesses and [he] was never given the opportunity to request witnesses." (Id. at 24.) Based upon plaintiff's testimony and the decision of the state court, this court concludes that plaintiff fully and fairly litigated the issue of witnesses.

13

Plaintiff also argues that he was denied an opportunity to fully and fairly litigate his claims because the state court decision was contrary to established law. After reviewing all related papers, the court concludes that this argument is grounded in plaintiff's dissatisfaction with the decision issued by the state court. Plaintiff's recourse for claims that the state court acted improperly is an appeal of the state court decision, not a civil rights action in federal court.

In Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983), the Supreme Court held that the federal district court lacks subject matter jurisdiction to review state court judgments. Thus, under the Rooker-Feldman doctrine, the federal district cannot entertain a collateral attack on a state court judgment "cloak[ed] . . . as a § 1983 action." Davidson v. Garry, 956 F. Supp. 265, 269 (E.D.N.Y. 1996), aff'd, 112 F.3d 503 (1997). Section 1983 may not be used as a substitute for the right of appeal in the state courts. See Tonti v. Petropoulous, 656 F.2d 212, 216 (6th Cir. 1981); Noyce v. City of Iola, Kansas, No. 89-4092-R, 1990 WL 41399 (D. Kan. Mar. 29, 1990) (citing cases).

In the state habeas action, the court decided plaintiff's claims presented in this case, namely whether plaintiff received proper notice, whether he was unconstitutionally denied witnesses and whether the third page of the hearing report was fabricated.

Because the state court determined that plaintiff had been afforded all appropriate process at both hearings, this action is barred by the doctrine of collateral estoppel. Thus, defendants' motion for summary judgment is granted on this ground and the court need not address the remaining grounds raised by defendants.

In light of this determination, plaintiff's motion for summary judgment is denied. In addition, plaintiff has filed five other motions. Plaintiff's motions to strike and to set aside defendants' motion for summary judgment are denied. Plaintiff's motions to consolidate this case with Chance v. Strange, Case No. 3:98cv1758 (AHN)(HBF), and sequester witnesses are denied as moot. Plaintiff's motion for extension of time to respond to defendants' motion for summary judgment is granted nunc pro tunc.

## Conclusion

Defendants' Motion for Summary Judgment [Doc. #39] is GRANTED. Plaintiff's Motion for Summary Judgment [Doc. #36] is DENIED. Plaintiff's Motion for Enlargement [Doc. #49] is GRANTED nunc pro tunc. Plaintiff's Motion to Set Aside Defendants' Motion for Summary Judgment [Doc. #45] and Motion to Strike [Doc. #46] are DENIED. Plaintiff's Motion to Sequester Witnesses [Doc. #51] and Motion to Consolidate [Doc. #52] are DENIED as moot. The Clerk is directed to enter judgment in favor of defendants and close this case.

This is not a recommended ruling. The parties consented to the exercise of jurisdiction by a magistrate judge and the case was referred to the undersigned on December 1, 1998. (See Doc. #47.)

SO ORDERED.

Entered this ___6___ day of July, 1999, at Bridgeport, Connecticut.

HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE