UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2003 DEC -9  P 12:29

US DISTRICT
BRIDGEPORT CT

ANGEL CABALLERO  :  PRISONER
                    CIVIL NO. 3:03CV407 (JCH)(HBF)

V.                 :

JOHN ARMSTRONG, ET AL.   :   DECEMBER 8, 2003

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

### FACTS

This case is a pro se civil rights action by Angel Caballero, an inmate at the Northern Correctional Institution. When this action was instituted, it was an action wherein plaintiff complained about having to recreate in restraints, an issue previously litigated by plaintiff in habeas court. See Caballero v. Warden, 2003 Conn. Super. Lexis 5 (2003). On or about August 21, 2003, plaintiff moved to amend his complaint. Thereafter, defendants appeared in the matter, unaware of plaintiff's motion for leave to amend until defense counsel received the court's order dated October 10, 2003, granting plaintiff's motion for leave to amend. Thereafter, on October 15, 2003, plaintiff moved to withdraw his amended complaint and on October 24, 2003, plaintiff requested that the court recant its October 10, 2003 ruling. Plaintiff was thereafter deposed on November 7, 2003.

At his deposition, plaintiff testified as follows:

Q. Do you have any other claims in this lawsuit, Caballero versus Armstrong, et al, that we haven't spoken about today?
A. It depends; which complaint are you referring to?
Q. Well, which one—because I know you filed a second amended one, and then you tried to withdraw it; correct?
A. Yeah. Correct. . . .

Q. I'm showing you, I think what was the first complaint that you filed. Do you want to go back to the first complaint that you filed; is that what you're trying to do?
A. Yeah. To the one that says May 2nd, yeah that one.

Plaintiff's deposition p. 52-53.

Shortly, thereafter, given plaintiff's expressed desire to go back to the May 2, 2003 complaint where plaintiff complained only about recreating in restraints, defendants concluded plaintiff's deposition.

Less than a month after his deposition, plaintiff seeks to amend his complaint to add in several new defendants and several new claims. Plaintiff seeks to add in medical and mental health defendants, when no medical defendants were previously sued.

In his proposed amended complaint, plaintiff complains that the policy requiring inmates to recreate in restraints denied meaningful exercise.

The new claims plaintiff seeks to assert are

1) defendants, (unnamed) do not provide adequate clothing or footwear, no gloves, no hat for outdoor recreation;

2) Defendants Wollenhaupt and Hughes have been deliberately indifferent in that they have failed to provide, proper, timely medical care for the serious injuries inflicted due to the use of full restraints on the plaintiff;

3) Defendants failed to follow departmental directives by not filing incident reports, by not taking photographs, and by not documenting plaintiff's serious injuries;

4) Double celling inmates is unconstitutional[1]

5) Calm, protesting inmates are maced and subjected to excessive force by being placed into in-cell restraints or four point restraints for refusal to take a cellmate. [2]

---

[1] This was the only one of the new proposed claims that was in plaintiff's August 21, 2003 Proposed Amended Complaint.

2

6) Even when inmates have a serious problem with their cell partner, the defendants refuse to move the inmates unless they have a fight with their cell mate.

7) Inmate Flores was moved into plaintiff's cell on January 24, 2003 and thereafter assaulted plaintiff on January 27, 2003.

8) Defendants Chaplin, Powers, Lateer and O'Riley have refused to treat plaintiff's serious mental health needs from April 22, 2002 until the present.

9) Defendants Chaplin, Powers, Lateer and O'Riley are "notorious" for falsifying reports, and records to assist other defendants in the ongoing abuse, excessive force and use of restraints for torture.

10) Defendants, Chaplin, Powers, Lateer and O'Riley have failed to place plaintiff on single cell status.

Based upon these new allegations of fact, plaintiff seeks to bring numerous legal claims.

Because defendants would be prejudiced by allowing this amendment, given that defendants have already deposed plaintiff, and because most of plaintiff's proposed amendments would be futile plaintiff's request for leave to amend should be denied.

## ARGUMENT

A. Standard For Leave to Amend

The liberal rules of federal procedure provide that leave to amend should be freely given when justice so requires. Rule 15(a), F.R. Civ. P.; Forman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed. 2d 222 (1962). However, the Court has discretion in deciding whether or not to grant leave to amend. Azurite Corp. v. Amster & Co., 52 F.3d 15, 19

---

[2] Plaintiff does not allege that he personally has been maced or placed into in cell restraints or four point restraints for refusing to take a cellmate.

3

(2nd Cir. 1995). Even in cases involving pro se litigants, it has been held that leave to amend need not be given if the proposed complaint does not indicate that a valid claim may be stated. Platsky v. CIA, 953 F.2d 26, 29 (2nd Cir. 1991) (per curiam). It need not be granted if it would be futile. Pargburn v. Culbertson, 200 F.3d 65, 70-71 (2nd Cir. 1999); Acito v. Imcera Group, Inc., 47 F.3d 47, 55 (2nd Cir 1995); Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 199, 123 (2nd Cir. 1991); Katzman v. Khan, 67 F. Supp. 2d 103 (E.D.N.Y. 1999); Tri-State Judicial Services, Inc. Markowitz, 624 F. Supp. 925, 926 (E.D.N.Y. 1985).

Leave to amend properly denied where new claims involved "an entirely new set of operative facts of which it cannot be said that the original complaint provided fair notice." Ansam Assoc. Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985); see also Barows v. Forest Lab., Inc, 742 F.2d 54, 58 (2d Cir. 1984)(Motion for leave to amend properly denied where the "new claims represent[] a radical shift from the recovery sought in the original complaint."

A supplemental pleading may be denied "where that pleading relates only indirectly, if [a]t all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts and related to a defendant not implicated in the original complaint." Scottish Air Int'l, Inc v. British Caledonian Group, PLC, 152 F.R.D. 18, 28 (S.D.N.Y. 1993) quoting Nottingham v. Peoria, 709 F. Supp. 542, 544 (M.D.Pa. 1988).

### B. Defendants Would be Prejudiced by the Amendment

Here, plaintiff is attempting to add entirely new claims and entirely new defendants. More specifically, this action pertains to plaintiff having to wear full

4

restraints during recreation. Plaintiff now seeks to allege that different defendants have violated his constitutional rights by 1) not providing him medical care, 2) conspiring to not provide him medical care, 3) double celling inmates, 4) not providing inmates with adequate clothing and footwear for outdoor recreation, 5) not providing him mental health care and treatment 6) conspiring to not provide him with mental health care or treatment, 7) failing to place plaintiff on single cell status and 8) falsifying reports and records to assist other defendants in the ongoing abuse, excessive force and use of restraints. These allegations do not clarify or amplify plaintiff's claim that his eighth amendment was violated by having to recreate in restraints. Moreover, during his deposition, plaintiff indicated to defense counsel, he was only complaining about the recreation in restraint issue, or the May 2003 complaint. Plaintiff's deposition p. 52-53; Plaintiff should not be allowed to file a proposed amended complaint less than a month after his deposition was taken, raising entirely new complaints, against entirely new defendants. Because defendants have already taken plaintiff's deposition, and moved to dismiss this matter on the grounds of collateral estoppel, they are prejudiced if plaintiff is allowed to raise entirely new claims against new defendants.

Finally, many of plaintiff's new proposed claims fail to state a legally sufficient cause of action. Accordingly, plaintiff's motion for leave to amend should be denied.

    C.  <u>Plaintiff's Proposed Conspiracy Claims Are Legally Insufficient and Thus Plaintiff's Proposed Amendment is Futile</u>

Because plaintiff's proposed conspiracy claims are conclusory, they are legally insufficient and plaintiff's motion for leave to amend should be denied.

5

"Complaints relying on civil rights statutes are plainly insufficient unless they contain some specific allegation of fact indicating a deprivation of civil rights, rather than simple conclusions." Koch v. Yunich, 533 F. 2d 80, 85 (2nd Cir. 1976) (emphasis added); see, e.g. Powell v. Jervis, 460 F.2d 551, 553 (2d Cir. 1976); Louis v. Ward, 444 F.Supp. 1107, 1109 (S.D.N.Y. 1978). A complaint relying on civil rights "must set forth facts showing some intentional and purposeful deprivation of constitutional rights." Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). The plaintiff must allege facts that indicate that the defendant has acted under color of state law to deprive him of a constitutionally or federally protected right. Lugar v. Edmondson Oil Co., 457 U.S. 922, 930 (1982); Washington v. James, 782 F.2d 1134, 1138 (2d. Cir. 1986) (emphasis added); see also, Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987); Mazurek v. Wolcott Bd. of Educ., 815 F. Supp. 71, 77 (D. Conn. 1993).

In his proposed amended complaint, plaintiff alleges that "defendants" conspired to deprive plaintiff of medical and mental health care. Plaintiff is bound to do more than merely state vague and conclusory allegations respecting the existence of conspiracies. It is incumbent upon him to allege with at least some degree of particularity overt acts in which defendants engaged that were reasonably related to the promotion of a claimed conspiracy. Hoffman v. Halden, 268 F.2d 280, 295 (9th Cir. 1959), rev'd in part on other grounds, 300 F.2d 34 (9th Cir. 1962).

> In a civil conspiracy, the conspiracy itself is not a cause of action, without overt acts, because again it is the overt act which moves the conspiracy from the area of thought and conversation into action and causes the civil injury and resulting damage. Accordingly, the cases hold that the damage in a civil conspiracy flows from the overt acts and not from the conspiracy.
> Therefore, the certainty we look for in a proper complaint under the Civil Rights Statutes, is not in the general allegations of conspiracy, purpose,

6

> intent and color of authority but the certainty and substance in the particular acts which are alleged to have caused damage. The real question is whether or not the amended complaint, in addition to the general allegations referred to above, sets forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff.

Id. at 295 (emphasis added).

In Jones v. Owen Federal Bank, 147 F. Supp. 2d 219 (S.D.N.Y. 2001), the Court found that claims of conspiracy to violate the civil rights of a property owner whose mortgage default had led to foreclosure were insufficient to withstand a motion to dismiss. Plaintiff claimed that defendants conspired against him during foreclosure proceedings, but the court held that the alleged claims "merely recited the state foreclosure history and are not sufficiently clear to have provided ... a fair understanding of what the plaintiff is complaining about or to have allow the [defendants] to know whether there is a legal basis for recovery." Jones, 147 F. Supp. 2d at 224. To claims that the defendants engaged in conduct proscribed by the Fair Debt Collection Practices Act which violated his civil rights, the court found that "Plaintiff fails to allege what that conduct consisted of, who specifically engaged in the conduct and when the conduct took place." Id.

Similarly, a court found that allegations devoid of substantive facts were too conclusory as to be actionable in Vitale v. Nuzzo, Jr., et al., 674 F. Supp. 402 (D. Conn. 1986). In Vitale, the plaintiff alleged that defendants has conspired with the state trial judge to deprive him of equal protection rights as well as the Eighth Amendment guarantee against cruel and unusual punishment.

The Court held:

7

> It is of course generally true that a complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations", Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957), and a pro se complaint is naturally held to "less stringent standards than formal pleadings drafted by lawyers", Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972). On the other hand, there must be factual allegations of substance beyond conclusory labels and assertions, "at least some allegations of facts indicating a deprivation of civil rights", Fine v. City of New York, 529 F.2d 70, 73 (2d Cir. 1975). (citation omitted). That minimum safeguard to indicate the genuine existence of a federally actionable claim, moreover, is particularly appropriate when the complaint rests on a broad claim of "conspiracy", in which case "diffuse and expansive allegations are insufficient", Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977).

Id. at 404 (emphasis added). See e.g., Kashelkar v. Rubin & Rothman, 97 F. Supp. 2d 383 (S.D.N.Y. 2000); Scheiner v. Wallace, 1995 U.S. Dist LEXIS 11070 (S.D.N.Y. 1995); See also, e.g., Powell v. Jarvis, 460 F.2d 551 (2d Cir. 1972).

Here, plaintiff alleges in his proposed Fifth Claim for Relief on page 43 that "defendants" conspired to deprive him of medical care. Because this claim is diffuse and conclusory it is of no legal effect. Thus, it would be futile to allow plaintiff to amend his complaint to include a conspiracy claim against the "defendants" for the denial of medical care.

Similarly, in his Twelfth Claim for Relief, on page 51, plaintiff alleges that "defendants" conspired to deprive him of mental health care and treatment. Again, this claim is so diffuse and conclusory that it is of no legal effect. Thus, it is futile to allow plaintiff to amend his complaint to include a conspiracy claim against "defendants" for the denial of mental health care and treatment. Accordingly, plaintiff's request for leave to amend should be denied.

8

D. <u>Plaintiff Has Failed To Allege An Actual Injury With Regard to Most of His New Claims</u>

> It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution. In the context of the present case: It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur. Of course the two roles briefly and partially coincide when a court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm. <u>But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly.</u> If--to take another example from prison life--a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, see Estelle v Gamble, 429 US 97, 103, 50 L Ed 2d 251, 97 S Ct 285 (1976), simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons.

<u>Lewis v. Casey</u>, 518 U.S. ___, 116 S.Ct. ___, 135 L.Ed2d 606, 616-17 (1996) (emphasis added).

Here, in his proposed amended complaint, plaintiff alleges that defendants do not provide adequate clothing or footwear, no gloves no hat for outdoor recreation. Plaintiff fails to allege any fact to suggest that he has suffered an actual injury from the alleged inadequate clothing or footwear. Thus, plaintiff's proposed amendment is insufficient to maintain this § 1983 claim in federal court, futile and must be denied.

Similarly, plaintiff fails to allege that he has personally, suffered any injury from the alleged fact that calm, protesting inmates are subjected to excessive force by being

9

maced, and/or placement into restraints for refusing to take a cellmate. Plaintiff does not claim that these alleged uses of force have happened to him for failing to take a cellmate. Because plaintiff has not alleged that he personally suffered an actual injury from the alleged policy about which he complains, plaintiff's allegations in this regard are legally insufficient, his proposed amendment futile and it should be denied.

Similarly, plaintiff alleges that defendants Chaplin, Powers, Lateer, and O'Riley are "notorious" for falsifying reports, and records to assist other defendants in the ongoing abuse, excessive force and use of restraints for torture. Because plaintiff has not alleged that he was subjected to excessive force or restraints for torture, he has not alleged any actual injury from Chaplin et al's alleged falsification of reports and records. Plaintiff's claims are legally insufficient and plaintiff's motion for leave to amend should be denied.

E. <u>Plaintiff's Claims About Denial of Mental Health Care Are Legally Insufficient Because Plaintiff Has Not Alleged an Actual Physical Injury</u>

Here, plaintiff alleges that defendants Chaplin, Powers, Lateer and O'Riley have refused to treat plaintiff's serious mental health needs. However, plaintiff has not alleged and cannot allege that he suffered a physical injury because of this alleged failure to treat his mental health needs.

The Prison Litigation Reform Act provides that "No federal civil action may be brought by a prisoner. . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Although the statute does not define "physical injury," the developing case law in this area reflects the view that, consistent with the Eighth Amendment jurisprudence, the predicate injury need not be significant but must be more than de minimis. <u>See Siglar v.</u>

10

Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (physical injury required as predicate for emotional distress claim must simply be more than de minimis); Leon v. Johnson, 96 F.Supp. 2d 244, 2000 WL 674698 at *3 (W.D.N.Y. 2000) (accord); Warren v. Westchester County Jail, 106 F. Supp. 2d 559, 570 (S.D.N.Y. 2000).

In Warren, the plaintiff suffered two superficial scratches to his face as a result of an altercation between the plaintiff and a correctional officer. The district court held that this was a de minimis injury insufficient to base a claim for emotional distress under the PLRA. Accordingly, the plaintiff's excessive force claim was dismissed.

> The Fifth Circuit in Siglar v. Hightower, supra, offered no definition of what is a physical injury, or a de minimis injury. The only standard offered was a de minimis injury was not sufficient to carry the day. A claim by a prisoner of an injury in prison he received in an unprovoked assault or excessive use of force by the guards or a failure to protect from other inmates should utilize the same approach to the nature of the injury and whether it actually falls under the new statute with regard to being a physical injury as to how people in a free world setting in exercising their day-to-day medical care would treat such injuries. Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate de minimis standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice? In the prison setting in the Texas Department of Correction Justice-Institutional Division, and in other prisons like this private prison, after an altercation the correction officers are usually required regardless of observable injuries, no injuries, etc., to take the inmate to the prison infirmary to have an examination to determine if the prisoner received any physical injury requiring professional medical care. Thus, the mere reporting of cuts and abrasions, or swollen wrists by the medical personnel does not prove the inmate has received a physical injury which would measure up to the standards set out in the current statute, 42 U.S.C. 1997e(e), and Siglar v. Hightower, supra.
> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up

11

to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise above de minimis, would under Sigler v. Hightower, supra, require more than the types and kinds of bruises and abrasions above which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).

Luong v. Hatt, 979 F.Supp. 481, 486 (N.D. Tex. 1997) cited by Chief Judge Walker in Concurring Opinion in Dawes v. Walker, 2001 U.S. App. LEXIS 2438 (2d Cir. 2001).

Here, plaintiff does not allege that he sustained any injury as a result of allegedly being denied mental health care by defendants Chaplin, Powers, Lateer and O'Riley. Accordingly, it is futile to allow plaintiff to amend his complaint to seek compensatory damages for defendants' alleged failure to provide him with mental health care and treatment. Accordingly, plaintiff's motion for leave to amend should be denied.

F. **Plaintiff Has No Right to A Single Cell and Thus His Claims Regarding Such Are Legally Insufficient and His Proposed Amendment Should be Denied**

Similarly, plaintiff's proposed allegations 1) that double celling is unconstitutional and 2) that defendants Chaplin, Powers, Lateer and O'Riley are liable to him for failing to place him on single cell status are legally insufficient. Accordingly, plaintiff's request for leave to amend his complaint should be denied.

The denial of single cell status by itself does not rise to the level of an Eighth Amendment violation. See, Rhodes v. Chapman, 452 U.S. 337 (1981). In Rhodes, the Supreme Court addressed the issue of whether the placing of two prisoners in a single cell constituted cruel and unusual punishment in violation of the Eighth Amendment. Id. at 344–45. The Court held that in order for prison conditions to rise to the level of an

Eighth Amendment violation there must "involve the unnecessary and wanton infliction of pain" which deprives inmates of the minimal necessities of life. Id. at 346–47. In finding that the placement of two prisoners in a single cell did not rise to the level of an Eighth Amendment violation on the part of the prison officials, the Supreme Court in Rhodes stated:

> The double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care, or sanitation ... Although job and educational opportunities diminished marginally as a result of double celling, limited work hours and delay before receiving education do not inflict pain, much less unnecessary and wanton pain.

Id. at 348.

A District Court granted the defendant prison official's motion for summary judgment when the plaintiff, who was a protective custody inmate, was raped by his cellmate in segregation. The court stated:

> Here, the risk that Rayfield posed to Langston was no different than the risk posed by double-celling in any maximum security prison. Prisons are dangerous places full of dangerous people. Prisoners are dangerous, which is precisely why many are confined in the first place. McGill, 944 F.2d at 348. Some level of brutality, violence, and sexual aggression among prisoners is inevitable "unless all prisoners are locked in their cells 24 hours a day and sedated ('a solution' posing constitutional problems of its own). . . ."

Langston v. Peters, 1995 U.S. Dist. LEXIS 10985 (N.D. Ill. Aug. 1, 1995) aff'd 100 F.3d 1235 (7th Cir. Ill. 1996), reh'g denied, 1996 U.S. App. LEXIS 31835 (7th Cir. Ill. Dec. 4, 1996).

In the instant case, plaintiff seeks to amend his complaint to add the claims that 1) double celling is unconstitutional and 2) that defendants Chaplin, Powers, Lateer and O'Riley violated plaintiff's rights because they failed to place him on single cell status.

However, double celling is constitutional and plaintiff has not alleged any facts to suggest that Chaplin, Powers, Lateer and O'Riley violated his civil rights by failing to place him on a single cell for plaintiff's "physical and mental well being." Because plaintiff's proposed amended complaint is futile, his motion for leave to amend should be denied.

## CONCLUSION

Wherefore, all the foregoing reasons, plaintiff's motion for leave to amend filed on November 21, 2003 should be denied.

DEFENDANTS
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: *(signature)*
Ann E. Lynch
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Tel: (860) 808-5450
Federal Bar #ct08326
E-Mail: ann.lynch@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following this ____ day of December, 2003:

Angel Caballero #214362
Northern Correctional Institution
287 Bilton Road
Somers, CT 06071

Ann E. Lynch
Assistant Attorney General

Page 1

```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2
 3
 4                                    )
    ANGEL CABALLERO, JR.,              )
 5           Plaintiff                 )
                                       )      PRISONER
 6   Vs.                               )      No: 3:03CV407 (JCH)
                                       )
 7   COMMISSIONER JOHN J.              )
     ARMSTRONG, ET AL                  )
 8           Defendants                )           COPY
                                       )
 9
10
11           Deposition of ANGEL CABALLERO, JR., taken
     before Judith L. Kline, Certified Shorthand
12   Reporter/Notary Public in and for the State of
     Connecticut, pursuant to notice, at the Northern
13   Correctional Institution, 287 Bilton Road, Somers,
     Connecticut, on November 7, 2003 at approximately 9:00
14   a.m.
15
     APPEARANCES:
16
     FOR THE PLAINTIFF, (PRO SE):
17        ANGEL CABALLERO, JR.
          NORTHERN CORRECTIONAL INSTITUTION
18        287 Bilton Road
          Somers, CT 06071-1044
19
     FOR THE DEFENDANTS:
20        ANN E. LYNCH, ASSISTANT ATTORNEY GENERAL
          110 Sherman Street
21        Hartford, CT 06105
22   ALSO PRESENT:
          Correctional Officer Colon
23
24
25
```

Page 52

1  restraints, unable to do anything.
2     Q   And you said you're depressed.  So it makes you
3  sad?
4     A   Yeah, it does.
5     Q   Anything else?
6     A   It make me sad, brings misery on me.  I feel
7  like I'm being tortured for -- I'm not doing anything
8  wrong.
9     Q   Do you have any other injuries that you're
10 claiming you sustained, as a result of having to
11 recreate in handcuffs, leg irons and a tether chain?
12    A   No.
13    Q   Do you have any other claims in this lawsuit,
14 Caballero versus Armstrong, et al, that we haven't
15 spoken about today?
16    A   It depends; which complaint are you referring
17 to?
18    Q   Well, which one -- because I know you filed a
19 second amended one, and then you tried to withdraw it;
20 correct?
21    A   Yeah, correct.
22    Q   I'm glad you brought that up.  Who are you
23 suing at this time, in this complaint? Who are the
24 defendants right now, as you understand them to be?
25    A   To the best of my head, Armstrong, Tokarz.

Page 53

Q   I'm showing you, I think, what was the first complaint that you filed.  Do you want to go back to the first complaint that you filed; is that what you're trying to do?

A   Yeah.  To the one that says May 2nd; yeah, that one.

Q   Okay.  So you're asking the court to go back to the May 2, 2003 complaint?

A   Yes.

Q   Why do you want to withdraw the second amended complaint?

A   Because I want to seek legal assistance -- some form of legal assistance, so I could file one that's not, you know -- say, basically one that's going to be correct.  Because I'm struggling as far as legal.  I don't really know much about the law.  So I'm struggling.  So I seek legal assistance.

Q   Do you have anything else you want to tell me today?

A   Yeah.  I just want to say that my past -- my past disciplinary reports, criminal charges and the present disciplinary report that was falsely issued on me, are nothing to do with the lawsuit I'm bringing in court.

Q   I disagree with you, Mr. Caballero.  If I have